CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 17 2011

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **EARL RONALD JOHNSON** | Civil Action No. 7:11CV00177 |
| Plaintiff, | |
| | **MEMORANDUM OPINION** |
| vs. | |
| **MR. J. GARMAN, ET AL.,** | By: Samuel G. Wilson |
| | United States District Judge |
| Defendant(s). | |

Plaintiff Earl Ronald Johnson brings this action pursuant to 42 U.S.C. § 1983. Johnson alleges that defendants, individuals at the Virginia Department of Corrections' ("VDOC") Keen Mountain Correctional Center ("KMCC"), violated his constitutional rights by subjecting him to an excessive amount of tobacco smoke. From Johnson's allegations and submissions it is clear that he cannot show deliberate indifference by correctional center personnel. Therefore, the court finds that Johnson's complaint fails to state a plausible claim for relief, and dismisses it without prejudice pursuant to 28 U.S.C. § 1915A.

According to Johnson's complaint, he was wrongly exposed to second hand smoke ("ETS") while an inmate at KMCC. Johnson states that he is a non-smoker and correctional center personnel acted with deliberate indifference in permitting other inmates to possess tobacco products and paraphernalia in an established tobacco-free unit. Johnson was moved from Brunswick Correctional Center ("BKCC") to KMCC on October 7, 2009 as part of a group transfer. His group, consisting of approximately 46 offenders, was housed in a tobacco free unit. However, the warden at KMCC permitted the BKCC inmates to retain any tobacco they had in their possession at the time of transfer. Policy permitted these inmates to smoke these tobacco

products during outside recreation only. Moreover, according to documents and memoranda submitted by Johnson with his Complaint, on November 12, 2009 all tobacco products still in the inmates' possession were confiscated. Johnson claims that despite instruction to smoke tobacco products during outside recreation only, the inmates also smoked while inside the unit, subjecting plaintiff to ETS.

Johnson states that he was exposed to ETS from October 8, 2009 until February 9, 2010, with increased concentrations between 6 p.m. and 3 a.m. from October 12, 2009 through November 4, 2009. The exposure occurred in the common access areas used for recreation, television and phones, as well as in the showers and stairwells. The exposure also occurred in Johnson's cell. Although Johnson does not claim his cell mate smoked, he states smoke would enter his cell through the windows and vents as a result of KMCC staff smoking below his window and inmates smoking in adjacent cells. As a result of this exposure, Johnson claims that he suffered injuries including a stuffy nose, uneasiness, shortness of breath, shortness of temper, headaches and lightheadedness.

Section 1915A requires the court to conduct an initial screening of a prisoner's complaint "which ... seeks redress from a governmental entity or officer or employee of a governmental entity" and dismiss it if it is (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted;" or (2) "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(a)-(b). As discussed below, because the Court finds that Johnson's complaint fails to state a plausible claim for relief, the court will dismiss it without prejudice pursuant to § 1915A.

A prisoner's exposure to ETS may give rise to an Eighth Amendment claim if he is exposed to unreasonable levels of ETS, and prison authorities are deliberately indifferent to the

2

exposure. See, e.g., Helling v. McKinney, 509 U.S. 25, 35 (1993) (A prisoner "states a cause of action under the Eighth Amendment by alleging that [prison officials] have, with deliberate indifference, exposed him to levels of [tobacco smoke] that pose an unreasonable risk of serious damage to his future health."); see also Tudor v. Harrison, 195 F. App'x 160, 161 (4th Cir. 2006) (per curiam) (unpublished). The test for determining deliberate indifference based on exposure to ETS has both objective and subjective components. Helling, 509 U.S. at 35. To satisfy the objective component, a prisoner must show that he is being exposed to unreasonably high levels of ETS. Id.; see also Hunt v. Reynolds, 974 F.2d 734, 735 (6th Cir. 1992) (To satisfy the objective component, a prisoner must show that the exposure to smoke causes more than "mere discomfort or inconvenience."). Additionally, the prisoner must demonstrate that the risk is one which society deems "so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Helling, 509 U.S. at 36. To satisfy the subjective component, a prisoner must show that prison authorities were "knowingly and unreasonably disregarding an objectively intolerable risk of harm" to the plaintiffs' safety. Farmer v. Brennan, 511 U.S. 825, 846 (1994). The officials "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and ... must also draw the inference." Id. at 837.

Johnson has failed to show conduct on the part of any defendant which indicates a subjective, deliberate indifference to Johnson's exposure to unacceptable levels of ETS.[1]

---

[1] Regarding the objective component of his Eighth Amendment claim, Johnson has also failed to show a sufficiently serious level of exposure to ETS. Johnson claims that he was exposed to ETS for only four months, from November 2009 until February 2010. See Griffin v. DeRosa, 153 F. App'x 851, 853 (3rd Cir. 2005) (per curiam) (unpublished) (alleging exposure to ETS from inadequately ventilated restrooms over twenty months failed to show that the prisoner was exposed to unreasonably high levels of ETS contrary to contemporary standards of decency.); Pryor-El v. Kelly, 892 F. Supp. 261, 267 (D.D.C. 1995) (dismissing an ETS claim in which the plaintiff alleged that various unnamed inmates and prison officials smoke "in the TV room, games room, and the letter writing room."). Also, Johnson does not allege that he was assigned a smoking cellmate. Compare, e.g., Helling, 509 U.S. at 35 (holding that bunking with a cellmate who smoked five packs of cigarettes per day exposed an inmate to an unreasonable risk of future harm from ETS exposure). Further, Johnson does not claim that he is asthmatic, or allergic to tobacco smoke. See Powers v. Snyder, 484 F.3d 929, 932 (7th Cir. Ill. 2007) ("A prison is not required to provide a

3

Johnson stated in his complaint that prison officials told the inmates they could smoke only during outside recreation, were not permitted to smoke inside the pod, and that all tobacco products still in their possession would be confiscated on November 12, 2009. Further, KMCC was converted to a Tobacco-Free Facility on February 1, 2010. A prison's adoption of a no-smoking policy bears heavily on the deliberate indifference inquiry, and imperfect enforcement of a non-smoking policy does not rise to the level of deliberate indifference. See, e.g., Helling, 509 U.S. at 36; Talal, 403 F.3d at 427.

Johnson fails to state a claim under the Eighth Amendment arising from exposure to ETS and therefore his complaint should be dismissed.

For the reasons stated above, the court will dismiss Johnson's complaint pursuant to 28 U.S.C. § 1915A because it fails to state a claim upon which relief may be granted.

The Clerk is directed to send a copy of this memorandum opinion and the accompanying order to the plaintiff.

**ENTER**: This 17th day of June, 2011.

United States District Judge

---

completely smoke-free environment, except for prisoners who have asthma or some other serious respiratory condition that even a low level of ambient smoke would aggravate."). Moreover, Johnson does not claim that he suffered any ongoing health detriment after February 9, 2010, or that his exposure from November 2009 to February 2010 caused any specific lasting or permanent health problems. See Id. ("[A] prisoner who complains that cigarette smoking amounts to punishment because it is endangering his health must therefore show that his health is indeed endangered."). Finally, the documents Johnson submitted with his complaint and verified statement show that as of February 1, 2010 KMCC was completely tobacco free for offenders, staff, visitors and contractors.

4